UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHIE OVERTON, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>  Defendants. | Case No. 18-cv-02166-EMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR EX PARTE RESTRAINING ORDER**<br><br>Docket No. 2, 10 |

Plaintiffs Archie Overton and S. Patrick Mandel are drivers on Defendant Uber's transportation platform.[1] They have also been licensed as "transportation charter-party" (TCP) drivers by the California Public Utilities Commission ("CPUC"), which requires such drivers to pay an annual revenue-based fee. Recently, the CPUC suspended Plaintiffs' licenses for failure to pay the required fees. Plaintiffs argue that Uber, not they, should be on the hook for those fees because Uber should be deemed a "transportation charter-party carrier" ("TCP") under California law.[2] Plaintiffs allege that Uber should also qualify as a "transportation network carrier" ("TNC") under California law.[3] In light of Uber's alleged status as a TNC and TCP, Plaintiffs allege that Uber's continued operation without a permit violates state and federal registration and licensing

---

[1] For purposes of this order, "Uber" shall refer collectively to Defendants Uber Technologies, Inc., Raiser-CA, LLC, and Uber USA, LLC.

[2] A TCP carrier means "[e]very person engaged in the transportation of persons by motor vehicle for compensation, whether in common or contract carriage, over any public highway in this state. Charter-party carrier of passengers includes any person, corporation, or other entity engaged in the provision of a hired driver service when a rented motor vehicle is being operated by a hired driver." Cal. Pub. Util. Code § 5360.

[3] A TNC carrier is "an organization . . . operating in California that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle." Cal. Pub. Util. Code § 5431(a).

requirements. Although Plaintiffs' immediate harm is the suspension of their TCP licenses (which can be remedied by payment of a $456.17 fee), Plaintiffs seek a sweeping temporary restraining order that requires Uber to halt all of its transportation services anywhere in the United States.

Plaintiffs' request for a hearing is denied as it will not aid resolution of this motion. *See* Docket No. 10; *see also* Local Civ. R. 7-1(b). For the reasons below, Plaintiffs' request for a temporary restraining order is **DENIED**.[4]

## I. FACTUAL BACKGROUND

A. Drivers' Allegations

Plaintiff Archie Overton drove for Uber from June 2014 to April 2015 but stopped because it was "not worth the effort," and Plaintiff S. Patrick Mendel has driven for Uber since June 2014 and continues to do so. Overton Decl. ¶¶ 1,17, 34; Mendel Decl. ¶ 1. Both drivers are also fully licensed commercial livery drivers. Overton Decl. ¶ 4; Mendel Decl. ¶ 4. Both provided only rides arranged by Uber or directly with their private clientele. Overton Decl. ¶ 5; Mendel Decl. ¶ 9. Uber deducted service fees of 25% or more from the rides it coordinated for both drivers. Overton Decl. ¶ 11; Mendel Decl. ¶ 31. According to Plaintiffs, because Uber purportedly lacked authorization to operate as a transportation provider, the deduction of those service fees was unlawful. Overton Decl. ¶ 28; Mendel Decl. ¶¶ 66-67.

Both drivers also claim that the CPUC has demanded that they pay fees based on the revenues they generated through Uber in their capacity as TCP drivers; because Plaintiffs did not pay the fees, the CPUC suspended their TCP licenses on April 9, 2018 for failure to pay $456.17. Overton Decl. ¶¶ 31-32; Mendel Decl. ¶¶ 69-71. It is unclear how Overton attributes his suspension to Uber's failure to pay fees, as he says that he stopped driving for Uber in 2015 and that the CPUC's audit was based only on the fourth quarter of 2017. Overton Decl. ¶ 30. In any case, both Plaintiffs claim that the CPUC should demand these fees from Uber, not them, because

---

[4] In a footnote, Uber claims the TRO should not be granted with respect to fee disputes because "this fee dispute (and any other disputes) arise out of Plaintiffs' arbitration agreement with Uber." Opp. at 10, n. 14. However, Uber has not moved to compel arbitration nor has it asked the Court to hold Plaintiffs' request in abeyance pending such a motion. The Court construes Uber's passing reference as limited consent for the Court to adjudicate the TRO request.

2

Uber itself constitutes a TCP provider. During the suspension of their TCP licenses, neither Plaintiff may provide TCP services without facing fines of $1,000 or 3 months imprisonment. Overton Decl. ¶ 33; Mendel Decl. ¶ 72.

Both drivers also claim that, through its unlawful operation, Uber has "flooded the streets with unlicensed transportation drivers" "diluting the amount of available fares" and causing losses of more than $37,000 to each driver. Overton Decl. ¶ 29; Mendel Decl. ¶ 68. Finally, Mendel claims that Uber has refused to reimburse him for airport access fees that he incurred as a licensed TCP driver at San Francisco International Airport. *Id.* ¶ 57.

B. CPUC's Proposed Order

According to Plaintiffs, a recent decision of the California Public Utilities Commission states that Uber has no authority to operate under California law. Mendel Decl. ¶¶ 58-63; Compl. ¶ 29, 33. As Plaintiffs' complaint acknowledges, however, and as the document itself clearly indicates, the document is simply a "proposed Decision." Compl. ¶ 33; *see also* Mendel Decl., Ex. C ("CPUC Proposed Decision").[5] The proposal, authored by a single commissioner, concludes that various Uber entities (Raiser-CA, LLC, Uber USA, LLC, and UATC, LLC) are mere instrumentalities of Uber Technologies, Inc., and, consequently, that Uber Technologies, Inc. may be considered both a "transportation network company" (TNC) and a "transportation charter party carrier" (TCP) under California law based on the services provided by its subsidiaries. *Id.* at 14-25, 27-32. The proposed order recommends therefore that Uber register as a TNC and TCP, be assessed back fees, and pay such fees going forward. It does not recommend that Uber operations cease. Also, the proposal makes clear that "[u]ntil and unless the Commission hears the item and votes to approve it, the proposed decision has no legal effect." *Id.* at 1. As the proposal indicates, the Commission's first opportunity to vote will be April 26, 2018, which has not yet passed. Thus, at this time, the CPUC has not made a binding decision regarding Uber's status as a TCP or TNC; a single commissioner has merely proposed that it do so, and even if that decision adopts the Commission's proposal, Uber would not stop operating.

---

[5] At the request of both parties, the Court takes judicial notice of the proposed decision because it is a matter of public record whose contents are not reasonably subject to dispute.

3

## II. DISCUSSION

To obtain a temporary restraining order, Plaintiffs must demonstrate a likelihood of success on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction would be in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary relief is an "extraordinary and drastic remedy" that should only be awarded "upon a clear showing that the plaintiff is entitled to [it]." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

Plaintiffs have not met their burden. As a basis for preliminary relief, Plaintiffs assert two types of harm.[6] First, Plaintiffs allege that the suspension of their TCP licenses by the CPUC prevents them from doing business. However, even if the Court temporarily enjoins Uber from providing ride services, Plaintiffs' licenses would remain suspended until they paid the requisite fee to the CPUC. This poses a fatal problem because granting preliminary relief would not redress the harm—it would not result in reinstatement of their TCP licenses. *See Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (to satisfy Article III standing requirements, a plaintiff must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision"); *see also Vegan Outreach, Inc. v. Chapa*, 454 Fed.Appx. 598 (9th Cir. 2011) (affirming denial of preliminary injunction where plaintiff failed to show it would redress alleged irreparable harm). Moreover, to the extent they allege that Uber, not they, must pay the $457.17 reinstatement fee, that is not irreparable harm as required for injunctive relief because damages may be recovered at the end of the suit.[7] *See, e.g., Los Angeles Memorial Coliseum Comm. v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("The temporary loss of income, ultimately to be recovered, does not usually constitute

---

[6] Plaintiffs also broadly assert that Uber drivers operating without federal or state licenses also threaten public safety, but they have not shown that they personally face a likelihood of imminent safety threats from Uber's continued operation. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (to support Article III standing, "[p]laintiffs must demonstrate a personal stake in the outcome" because "[a]bstract injury is not enough"; rather, "[t]he plaintiff must show that he sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical" (citations and quotations omitted)).

[7] Plaintiffs do not allege that they lack the resources to make the $456.17 payment.

4

irreparable injury." (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (internal alterations omitted)). The same applies to Plaintiffs' claim that Uber should return the service fees it has deducted from their fares and should reimburse them for airport carrier fees.

The second category of harm alleged is Uber's "dilution" of available fares by flooding the market with rideshares despite lacking the requisite legal permits to do so. Lost fares might plausibly constitute irreparable harm supporting an injunction because they are "neither easily calculable, nor easily compensable[.]" *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1066 (N.D. Cal. 2000); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or good will certainly supports a finding of the possibility of irreparable harm.").[8] However, even if Plaintiffs' theory is correct—that Uber is a TNC and TCP and thus must register and pay the requisite fees—it does not logically follow that an injunction shutting Uber down is the proper remedy. Uber could comply with the law simply by obtaining the requisite permits and paying the fees—precisely what the proposed CPUC decision recommends. That remedy would not address the "dilution" problem posited by Plaintiffs. Plaintiffs do not show that if Uber is required to register and pay fees, it will simply abandon the market or reduce the number of rides. In light of this missing link in the causal chain, Plaintiffs cannot show that an injunction would actually redress the harm. *See Friends of the Earth*, 528 U.S. at 180-81; *Vegan Outreach*, 454 Fed.Appx. 598.

Since Plaintiffs are unable to show irreparable harm or that an injunction would redress such harm, the requisites for a TRO are not met. The Court need not resolve the parties' merits arguments at this time[9] nor consider whether the balance of equities tips in Plaintiffs' favor or an

---

[8] Moreover, Plaintiffs have not introduced *evidence* that Uber's unlawful rides are the but-for cause of the dilution of available fares. In other words, Plaintiffs have to show not only that more fares would be theoretically available, but also that Plaintiffs would have actually taken those fare (and that their inability to do so was caused by Uber). Thus, even this category of harm is at this stage speculative. *See Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) ("Those seeking injunctive relief must proffer *evidence* sufficient to establish a likelihood of irreparable harm." (emphasis added)).

[9] Uber contends, for example, that this Court is without jurisdiction to review Uber's status as a TNC or TCP because California Public Utilities Code § 1759(a) vests it exclusively in the CPUC,;

injunction would serve the public interest.  Plaintiffs' request for a temporary restraining order is **DENIED**.[10]

This order disposes of Docket Nos. 2 and 10.

**IT IS SO ORDERED**.

Dated: April 20, 2018

_____
EDWARD M. CHEN
United States District Judge

---

that it is not subject to Federal Motor Carrier Safety Administration regulations under 49 C.F.R. Part 1.87 and 49 U.S.C. §§ 13101-14916; and that its Uber's operation without a TNC/TCP license is not unlawful and that, in any case, the CPUC has given it interim authority to operate its services.

[10] Except with respect to the CPUC's proposed decision, the parties' requests for judicial notice of other documents are **DENIED** as moot because the documents are unnecessary for resolution of this motion.