UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHIE OVERTON, et al., | Case No. 18-cv-02166-EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION TO VACATE JUDGMENT** |
| UBER TECHNOLOGIES, INC., et al., | Docket No. 103 |
| Defendants. | |

Plaintiffs Archie Overton and S. Patrick Mendel filed suit against the California Public Utilities Commission ("CPUC") and CPUC Commissioners (together, the "CPUC Defendants") for creating a licensing scheme for Transportation Network Companies ("TNCs") which Plaintiffs allege is preempted by federal transportation law and violates their constitutional rights. Plaintiffs also sued Rasier-CA, LLC for "acting in concert with the Commissioners" to "avoid and subvert" federal transportation laws. Finally, Plaintiffs sued Uber Technologies, Inc. and its subsidiaries Uber USA, LLC, Rasier-Ca, LLC, and unknown Doe Defendants (collectively, "Uber Defendants" or "Uber") under the Federal Motor Carrier Act ("FMCA"), 49 U.S.C. § 14102, and for several state law causes of action including breach of contract, fraud, and negligent misrepresentation.

The various Defendants filed motions to dismiss Plaintiffs' First Amended Complaint, *see* Docket Nos. 51, 59, and on August 3, 2018, the Court granted those motions to dismiss, *see* Docket No. 92. (The order granting the motions to dismiss was amended on August 8, 2018. *See* Docket No. 95.) On August 23, 2018, Plaintiffs filed a Notice of Appeal with the 9th Circuit Court of Appeals, *see* Docket No. 96 (USCA Case No. 18-16610); that appeal is still pending. On July 12, 2019, Plaintiffs filed a Motion to Vacate Judgment ("MVJ") for Fraud Upon the Court in

United States District Court
Northern District of California

this Court.  *See* Docket No. 103.

For the reasons discussed below, the Court **DENIES** the Motion to Vacate Judgment.

## I.     <u>LEGAL STANDARD</u>

Plaintiffs bring this Motion to Vacate Judgment pursuant to Rule 60(d)(3) of the Federal Rules of Civil Procedure.  Rule 60(d) notes that nothing in Rule 60 shall "limit a court's power to . . . set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  Thus, the rule vests significant power with district courts to vacate judgments for fraud on the court.  However, the power of Rule 60(d)(3) comes with a cost for those who seek the avail themselves of its relief: parties moving "for relief under Rule 60(d)(3) . . . must show fraud on the court, rather than the lower showing required for relief [from fraud] under Rule 60(b)(3)."  *United States v. Sierra Pacific Industries, Inc.*, 862 F.3d 1157, 1167 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 2675 (2018); *see also United States v. Beggerly*, 524 U.S. 38, 47 (1998) (describing the rule as having a "demanding standard").  The 9th Circuit has emphasized that "not all fraud is fraud on the court." *Sierra Pacific Industries*, 862 F.3d at 1167 (quoting *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999)).  To the contrary, "relief from judgment for fraud on the court is 'available only to prevent a grave miscarriage of justice.'" *Sierra Pacific Industries*, 862 F.3d at 1167 (quoting *Beggerly*, 524 U.S. at 47).  Thus, Rule 60(d)(3) presents a very high standard for those seeking relief.

When evaluating a Rule 60(d) motion to vacate a judgment, "the relevant inquiry is not whether fraudulent conduct 'prejudiced the opposing party,' but whether it 'harmed the integrity of the judicial process.'" *Sierra Pacific Industries*, 862 F.3d at 1168 (quoting *Estate of Stonehill*, 660 F.3d 415, 444 (2011)).  The fraud must rise to the level of an "intentional, material misrepresentation" and "involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id.*  Mere "[n]on-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court." *Appling v. State Farm Mutual Auto Insurance Co.*, 340 F.3d 769, 780 (9th Cir. 2003).  While "there is no specific set of facts that a petitioner must show . . . fraud on the court must be established by clear and convincing evidence." *Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir. 2015).

Additionally, "the doctrine only allows relief from judgment for after-discovered fraud."

*Sierra Pacific Industries*, 862 F.3d at 1166. This is because "allowing parties to raise issues that should have been resolved at trial amounts to collateral attack and undermines 'the deep rooted policy in favor of the repose of judgments.'" *Id.* at 1168 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)). In instances "where the moving party through due diligence could have discovered the alleged perjury or non-disclosure, such fraud does not disrupt the judicial process and thus does not constitute fraud on the court." *Id.* at 1169 (internal quotations omitted).

## II. ANALYSIS

Plaintiffs assert that "defendants in this case . . . misrepresented the law and the facts before this Court." MVJ at 2. Although their specific allegations about fraud and misrepresentation are wide-ranging, they can be broadly summarized as falling into four buckets:

(1) Although Plaintiffs argued in their First Amended Complaint ("FAC") that Defendants were "making authority [i.e. laws and regulations] in excess of their lawful authority and in direct conflict with federal passenger transportation laws in violation of the Supremacy and Commerce Clauses of the United States Constitution," FAC at 2, Plaintiffs' Motion to Vacate adds that "because California entered the federal MCSAP [Motor Carrier Safety Assistance Program] [and received] grant funding [from it]," Defendants are required to "comply [with] and enforce federal transportation law to receive the federal funds," MVJ at 2, 21. Plaintiffs argue that to suggest otherwise is a misrepresentation of the law. MVJ at 7–8.

(2) The Plaintiffs also allege that the Defendants "further misrepresented to the district court that the Commission had the authority, under California law, to charge PUCTRA fees on Plaintiffs 'gross intrastate fares.'" MVJ at 5. The Plaintiffs allege that such authority does not exist and, thus, that arguments to the contrary are a misrepresentation of California law. *Id.*

(3) The Plaintiffs also state that "attorneys for Uber . . . made significant misrepresentations to the district court . . . on California law, Federal transportation and antitrust law and the facts as they knew or should have known at the time." MVJ at 8.

United States District Court
Northern District of California

1    More specifically, the Motion to Vacate alleges that Uber "misrepresented to the

2    district court that Uber was not a motor carrier because it owned no vehicles, and Uber

3    was not a broker, but a technology company." MVJ at 9, 17, 28.

4    (4) Finally, Plaintiffs allege that the Defendants made misrepresentations about Plaintiffs'

5    standing. MVJ at 22. More specifically, the Motion to Vacate asserts that Defendants

6    made false allegations by arguing that Plaintiffs—because they did not drive for TNCs,

7    were never required to get TNC licenses, and were not credibly threatened with

8    enforcement of federal motor carrier laws—failed to demonstrate imminent injury.

9    MVJ at 22–23. Plaintiffs stated this argument "misrepresented the potential injury"

10   they might face. MVJ at 24, 25.

11   The Court addresses each of these allegations in turn.

12   A.    MCSAP Funding

13   Although Plaintiffs do not articulate their MCSAP argument in precisely this way, they

14   appear to allege that Defendants' conduct rises to the level of fraud upon the court because—by

15   failing to acknowledge their MCSAP obligations to comply with federal law—Defendants

16   misrepresented their obligations and duties to the Court. MVJ 21, 25. However, an omission of

17   information does not rise to the level of fraud upon the Court. As the Ninth Circuit has made

18   clear: mere "[n]on-disclosure . . . does not, by itself, amount to fraud on the court." *Appling v.*

19   *State Farm Mutual Auto Insurance Co.*, 340 F.3d 769, 780 (9th Cir. 2003). Thus, even if

20   Defendants had an obligation to call the Court's attention to information about their duties under

21   MCSAP, their failure to do so would not meet the high standard required for relief under Rule

22   60(d)(3); the omission would constitute mere nondisclosure, as opposed to the "grave miscarriage

23   of justice" that Rule 60(d)(3) requires.

24   Relatedly, "where the moving party through due diligence could have discovered the

25   alleged . . . non-disclosure, such fraud does not disrupt the judicial process and thus does not

26   constitute fraud on the court." *Sierra Pacific Industries*, 862 F.3d at 1169 (internal quotations

27   omitted). As Plaintiffs rely primarily on information from the Federal Register to advance their

28   MCSAP theory, it appears that a diligent search for this information prior to earlier proceedings

4

would have permitted Plaintiffs to bring it to the Court's attention at that time. *See* MVJ 21, 25. Plaintiffs have made no showing of diligence, nor have they offered any explanation as to why they could not have called the Court's attention to this information at an earlier time. Thus, Plaintiffs' arguments about MCSAP do not rise to the level of fraud upon the court.

B.    <u>PUCTRA Fees</u>

The Plaintiffs also allege that Defendants "misrepresented to the district court that the Commission had the authority, under California law, to charge PUCTRA fees on the Plaintiffs 'gross intrastate fares.'" MVJ at 5. In their Motion to Vacate, Plaintiffs contend that "the Commission . . . issued a RESOLUTION, February 5, 2019, where they admit overcharging PUCTRA fees to the tune of millions of dollars." MVJ at 5, 37. That Resolution does set fees for Charter Party Carriers, Transportation Network Companies, and Passenger State Corporations at 0.0000% of gross revenue (*i.e.*, the fee is *not* based on gross revenues), plus a $10 quarterly or $25 annual fee. MVJ Ex. C at 1. It also notes that the fee "reduction draws down the fund balance attributable to Passenger Vehicle Operators to a level consistent with CPUC budget policies." *Id.* at 5. However, this does not constitute an admission that the Commission illegally charged or overcharged fees earlier.

In its Amended Order granting Defendants' Motion to Dismiss ("Order") at 14, 25, Docket No. 95, the Court extensively discussed PUCTRA fees, and the Commission's resolution offers nothing that alters the Court's analysis of that issue. The Court is skeptical that this information raises an inference that perjury or misrepresentation occurred, let alone "an unconscionable plan or scheme . . . designed to improperly influence the court in its decision." *Sierra Pacific Industries*, 862 F.3d at 1168. This is far from the "grave miscarriage of justice" that the Ninth Circuit requires when relief from judgment is sought for fraud upon the court. *Sierra Pacific Industries*, 862 F.3d at 1167 (quoting *Beggerly*, 524 U.S. at 47). Thus, Plaintiffs' arguments about PUCTRA fees also fail to meet the high standard for fraud upon the court.

C.    <u>Uber As Motor Carrier</u>

The Plaintiffs also state that Uber "misrepresented to the district court that Uber was not a motor carrier because it owned no vehicles, and Uber was not a broker, but a technology

company." MVJ at 9, 17, 28. This argument also falls short of demonstrating fraud upon the court. For one thing, Defendants surely assumed that the Court was aware of its own prior decision and its determination about the nature of Uber's work. Assuming that is the case, it is hard to imagine how the Defendants' assertions about being a technology company "involve[d] an unconscionable plan or scheme . . . designed to improperly influence the court in its decision." *Sierra Pacific Industries*, 862 F.3d at 1168. To the contrary, Defendants' statements about the nature of their business constituted permissible legal argument, carefully calibrated to advance their interests in this case. Moreover, even if Uber did intentionally misrepresent the nature of its product to the Court in the case at bar, mere "perjury by a party or witness, does not, by itself, amount to fraud on the court." *Appling*, 340 F.3d at 780. Thus, Uber's representations to the Court that it was a technology company are a far cry from fraud upon the court.

D.  Standing

Finally, Plaintiffs allege that the Defendants made misrepresentations about Plaintiffs' standing by alleging that Plaintiffs had failed to demonstrate imminent injury. MVJ at 22. Plaintiffs believe this argument "misrepresented the[ir] potential injury," MVJ at 24, 25, and also believe that the Court "improperly applied *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)" to conclude that Plaintiffs lacked Article III standing," MVJ at 40. However, these assertions conflate legal argument with fraudulent misrepresentation. As Defendants have noted, "The 'fraud' that Plaintiffs assert are [sic] actually Uber's legal arguments – far from any actual fraud or misrepresentation. Plaintiffs' disagreement with the Court's determination on these issues does not rise to any form of fraud to support setting aside the judgment." Uber's Response at 4. The Court agrees and finds that Defendants' arguments about Plaintiffs' legal standing did not constitute fraud upon the court.

### III.  UBER'S WARNING ABOUT FRIVOLOUS FILINGS

In its response to the Motion to Vacate Judgment, Uber "requests that this Court . . . warn Plaintiffs that it will issue a gatekeeping order if Plaintiffs continue to file frivolous motions." Uber's Response at 4. It contends that "Plaintiffs have pushed the limits of acceptable litigation behavior" by "fil[ing] several motions with this Court that lacked basis or were procedurally

improper." *Id.* at 3. Uber claims that "Plaintiffs have filed no fewer than nine frivolous motions in this litigation . . . [and] Uber is forced to respond . . . , requiring a significant expenditure of resources despite the spurious nature of Plaintiffs' filings." *Id.* at 4.

The 9th Circuit has "recognize[d] that there is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). But it has also made clear that "such pre-filing orders should rarely be filed." *Id.* At this time, the Court does not believe it appropriate to restrict Plaintiffs' filing abilities or impose sanctions; however, it warns Plaintiffs' that such remedies are available to the Court and cautions them against filing additional motions that are merely attempts at relitigation.

This order disposes of Docket No. 103.

**IT IS SO ORDERED**.

Dated: September 20, 2019

_____
EDWARD M. CHEN
United States District Judge